JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-mother appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, that granted permanent custody of her children, S.G. and M.G., to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons that follow, we reverse and remand.
 {¶ 2} The record reflects that appellant is the mother of S.G., whose date of birth is November 14, 1999, and M.G., whose date of birth is May 9, 2001. The children, however, have different fathers. M.G.'s father established a parent-child relationship with M.G. and was represented by counsel during these proceedings. No parent-child relationship has been established by S.G.'s putative father, nor was CCDCFS able to locate the latter during the pendency of these proceedings.
 {¶ 3} In December 2002, CCDCFS filed a complaint for neglect and sought permanent custody of S.G. and M.G. The complaint alleged that appellant was unable to provide adequate care for the children because of substance abuse problems and her recent incarceration. The complaint further alleged that M.G.'s father and S.G.'s putative father similarly did not provide adequate care for the children, the former because of substance abuse problems and repeated drug-related criminal convictions. The children were placed in temporary emergency shelter custody of CCDCFS and attorney George Coghill was appointed guardian ad litem for the children. Appellant and M.G.'s father were likewise appointed counsel.
 {¶ 4} The case proceeded to hearing on April 15, 2003. Appellant was present and represented by counsel. Although duly notified, M.G.'s father was not present, but his counsel was. S.G.'s putative father, also notified, similarly failed to appear. In an entry journalized April 24, 2003, the court accepted appellant's admission to an amended complaint for neglect and heard testimony regarding the inability of M.G.'s father to provide care and support for M.G. and the agency's efforts at locating S.G.'s putative father. The court adjudicated both children neglected and continued its previous order of temporary custody.
 {¶ 5} The case proceeded to disposition on July 29, 2003. Counsel for both appellant and the father of M.G. were present. Although duly notified, appellant, M.G.'s father and S.G.'s putative father were not present. The court heard the testimony of CCDCFS social worker, Leandra Turner, before continuing the case after it learned that appellant had appeared late, but was then subsequently taken to the emergency room of a local hospital.
 {¶ 6} After repeated continuances, the disposition hearing eventually resumed on January 13, 2004. Appellant and both fathers were again not present, although duly notified; counsel for all parents, established and putative, were present, however. At the hearing, the court heard additional testimony from Ms. Turner. George Coghill, the children's guardian ad litem, also testified. After giving a brief history of his involvement in the case, the guardian recommended that the court award permanent custody to CCDCFS. In an entry journalized January 15, 2004, the court found in favor of CCDCFS and placed the children in the permanent custody of CCDCFS.
 {¶ 7} Appellant is now before this court and assigns six errors for our review.
 I. {¶ 8} In her first assignment of error, appellant contends that the trial court did not comply with Juv.R. 29(D) when it accepted her admission to an amended complaint at the adjudicatory hearing. Before addressing the merits of this assigned error, we find it necessary to determine whether this issue is timely appealed under App.R. 4(A).
 {¶ 9} In general, an aggrieved party has thirty days from the time an adjudication order is entered to appeal that order when it is accompanied by a temporary order of disposition. In re Murray (1990),52 Ohio St.3d 155, syllabus.
 {¶ 10} "An adjudication by a juvenile court that a child is `neglected' or `dependent' * * * followed by a disposition awarding temporary custody to a public children services agency * * * constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals * * *." Id.; see, also, In re Michael A. (Mar. 21, 2002), Cuyahoga App. No. 79835, 2002 Ohio App. Lexis 1272.[1]
 {¶ 11} This court has consistently refused to review errors associated with an adjudicatory order when that order is accompanied by an order of disposition, even an order of temporary disposition. Id.; see, also, Inre M.L.R., 150 Ohio App.3d 39, 2002-Ohio-5958, at ¶ 23; In re M.Z.,
Cuyahoga App. No. 80799, 2002-Ohio-6634, at ¶ 38. Notwithstanding these prior decisions, we find that App.R. 4(B)(5) authorizes an appeal of an adjudication order alternatively thirty days after the court renders a final order on all issues in the case. This rule governs partial final judgments and provides:
 {¶ 12} "If an appeal is permitted from a judgment or order entered in a case in which the trial court has not disposed of all claims as to all parties, other than a judgment or order entered under Civ.R. 54(B), a party may file a notice of appeal within thirty days of entry of the judgment or order appealed or the judgment or order that disposes of the remaining claims. Division (A) of this rule applies to a judgment or order entered under Civ.R. 54(B)."
 {¶ 13} The adjudication/temporary disposition order in this case was not entered under Civ.R. 54(B) and, thus, App.R. 4(B)(5) can be applied in this case to permit review of any alleged error associated with the April 24, 2003 adjudication order. See In re Kidd, 11th Dist. No. 2001-L-039, 2002-Ohio-7264, at ¶ 22-23; see, also, In re Eblin (1998),126 Ohio App.3d 777, 776; Horen v. Summit Homes, 6th Dist. No. WD-04-001, 2004-Ohio-2218, at ¶ 28-32.
Although we find appellant's appeal of the April 24th adjudication order to be timely, CCDCFS, nonetheless, complains that we are unable to review this order because appellant failed to include the order of adjudication in her notice of appeal as is required by App.R. 3(D). In support of this argument, CCDCFS relies on Bellecourt v. Cleveland,152 Ohio App.3d 687, 2003-Ohio-2468, reversed on other grounds,104 Ohio St.3d 439, 2004-Ohio-6551, wherein this court restated its position of "declin[ing] jurisdiction to review a judgment or order that is not designated in the notice of appeal." Id. at ¶ 38-40. We are unpersuaded.
 {¶ 14} App.R. 3(D) governs the content of the notice of appeal and provides, in part, that the notice of appeal "shall designate the judgment, order or part thereof appealed from." To the extent that members of this court, and other courts, have found that the failure to include such a designation is a jurisdictional defect, we disagree.
 {¶ 15} App.R. 3(A) governs the filing of the notice of appeal and provides, in relevant part:
 {¶ 16} "Failure of an appellant to take any step other than the timelyfiling of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal." (Emphasis added.)
 {¶ 17} Thus, it is the timely filing of the notice of appeal that is a jurisdictional prerequisite to this court's authority, not the contents
of that notice. Indeed, a reviewing court is free to take whatever action it believes is appropriate, including dismissal of the appeal when a notice of appeal is defective under App.R. 3. When it does so, however, it is not because of any jurisdictional impediment, but as an exercise of its discretion under this rule. See Transamerica Ins. Co. v. Nolan
(1995), 72 Ohio St.3d 320, 322-323; see, also, Horen v. Summit Homes,2004-Ohio-2218, at ¶ 20; McMonigal Excavating Concrete, Inc. v. Riley,
12th Dist. No. CA2003-07-075, 2004-Ohio-1508, at ¶ 12; cf. Shaffer v.OhioHealth Corp., 10th Dist. No. 04AP-236, 2004-Ohio-6523, at ¶ 12
(unnecessary to separately identify interlocutory order in notice of appeal because interlocutory orders merge into final order thereby making all previously entered orders subject to review on appeal).
 {¶ 18} App.R. 3 must be construed in light of the purpose of a notice of appeal, which is to apprise the opposite party of the taking of an appeal and "`* * * [i]f this is done beyond [the] danger of reasonable misunderstanding, the purpose of the notice of appeal is accomplished.'"Maritime Mfrs., Inc. v. Hi-Skipper Marina (1982), 70 Ohio St.2d 257, 259, citing Capital Loan Sav. Co. v. Biery (1938), 134 Ohio St. 333, 339
and quoting Couk v. Ocean Acc. Guar. Corp., Ltd. (1941),138 Ohio St. 110, 116; see, also, Parks v. Baltimore Ohio RR. (1991),77 Ohio App.3d 426, 428.
 {¶ 19} We cannot say that CCDCFS was surprised or misled by the notice of appeal filed by appellant. Appellant filed the notice of appeal without the assistance of an attorney. Indeed, the notice of appeal is a pre-printed form supplied by either the juvenile court or CCDCFS itself[2]
and is intended for use by pro se litigants. Appellant completed the form by filling in blanks for her name, address and other identifying information. It also included check-the-box options, which did not include an option for appealing the order of adjudication and temporary disposition. Instead, her only choice, on the pre-printed form, was to appeal the order of permanent or temporary custody. Also included in the notice of appeal was an affidavit, likewise completed by filling in the blanks, which contained a pre-printed statement referencing the grant of permanent custody.
 {¶ 20} Thus, what we have in this case is an appellant, without the benefit of counsel, using a pre-printed form supplied by either the court or CCDCFS that severely circumscribes her already limited knowledge of the appeal process. Under these facts, and given that the law of this state favors deciding appeals on their merits, we are unwilling to find that CCDCFS was surprised or misled by appellant's appeal of the order adjudicating her children as neglected.
 {¶ 21} CCDCFS, nonetheless, maintains that appellant failed to challenge the adjudication order in the trial court despite being present for two subsequent hearings. It argues, therefore, that appellant waived the issue for review on appeal.
 {¶ 22} We recognize that appellant did not object at any point during the proceedings below regarding the court's failure to comply with Juv.R. 29(D). It is true that, in general, a reviewing court will not consider issues that an appellant failed to first raise in the trial court. See State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78, 81. If the error is apparent on the face of the record and it is prejudicial to the appellant, however, application of the plain error doctrine will permit correction of judicial proceedings. Reichertv. Ingersoll (1985), 18 Ohio St.3d 220, 223. The doctrine is applicable in civil cases only in the extremely rare case where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122-123.
 {¶ 23} The termination of parental rights is "the family law equivalent of the death penalty." In re Hayes (1997), 79 Ohio St.3d 46, 48; see, also, In re Murray, 52 Ohio St.3d at 156 (stating that a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children).
 {¶ 24} Because this is so, a trial court's failure to comply with Juv.R. 29(D) has been found to constitute plain error in cases involving termination of parental rights. See In re Elliot, 4th Dist. Nos. 03CA65 66, 2004-Ohio-2770, at ¶ 15; In re Aldridge, 2002-Ohio-5988, at ¶ 16. Unlike this court's decision in In re M.F. Cuyahoga App. No. 82018, 2003-Ohio-4807, which involved an adjudication of delinquency as opposed to the termination of parental rights, we are unable to conclude that appellant waived this issue for review.
 {¶ 25} Because we conclude that there is no impediment, jurisdictional or otherwise, to this court's review of the April 24, 2003 adjudication order, we now consider whether the trial court erred when it accepted appellant's admission, as asserted in her first assignment of error.
 {¶ 26} Juv.R. 29(D) governs the procedure for accepting an admission and provides, in relevant part:
 {¶ 27} "The court * * * shall not accept an admission without addressing the party personally and determining both of the following:
 {¶ 28} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 {¶ 29} "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent and to introduce evidence at the adjudicatory hearing."
 {¶ 30} Thus, a trial court must carefully inquire as to whether the admission is voluntarily, intelligently and knowingly entered. In reBeechler (1996), 115 Ohio App.3d 567, 571-572. Although strict compliance with this rule is not constitutionally mandated, the record must demonstrate that the court substantially complied with the rule's non-constitutional requirements. A court's failure to substantially comply with Juv.R. 29(D) constitutes prejudicial error, requiring reversal of the adjudication order. Id.; see, also, In re Onion (1998),128 Ohio App.3d 498, 503, citing State v. Ballard (1981),66 Ohio St.2d 473, 476.
 {¶ 31} Reviewing the record in this case, we cannot conclude that the trial court sufficiently complied with the requirements set forth in Juv.R. 29(D). After CCDCFS moved to amend its complaint, appellant's counsel advised the court that appellant was prepared to enter an admission to the complaint as amended. Addressing appellant, the court stated:
 {¶ 32} "THE COURT: * * * [D]o you understand why you're in court here this afternoon?
 {¶ 33} "APPELLANT: Yes.
 {¶ 34} "THE COURT: Can you tell me why you think you're here this afternoon?
 {¶ 35} "APPELLANT: Over a custody battle.
 {¶ 36} "THE COURT: Do you understand what the prosecuting attorney has presented to the Court this afternoon in terms of amendments?
 {¶ 37} "APPELLANT: Yes.
 {¶ 38} "THE COURT: What does that mean to you?
 {¶ 39} "APPELLANT: It means that I plead to some of the amendments — that some were taken off and some of them are true.
 {¶ 40} "THE COURT: Do you understand what [CCDCFS] is doing here this afternoon? What is their purpose in being here this afternoon?
 {¶ 41} "APPELLANT: What is their purpose?
 {¶ 42} "THE COURT: Right.
 {¶ 43} "APPELLANT: It is a custody battle.
 {¶ 44} "THE COURT: Of which children?
 {¶ 45} "APPELLANT: My kids.
 {¶ 46} "* * *
 {¶ 47} "THE COURT: Are you prepared at this point to admit to the allegations as they have been amended?
 {¶ 48} "APPELLANT: Yes.
 {¶ 49} "THE COURT: Do you understand that the Court will make an adjudication, which means that the Court will find that the children are neglected as a result of that? That's the first phase of this hearing.
 {¶ 50} "APPELLANT: Yes.
 {¶ 51} "THE COURT: If you make that admission, the Court can make a conclusion that the children are neglected, do you understand that?
 {¶ 52} "APPELLANT: Yes.
 {¶ 53} "THE COURT: Then, do you understand that there would be a subsequent hearing at which the Court can make a disposition as to what will happen to both children?
 {¶ 54} "APPELLANT: Yes."
 {¶ 55} The court thereafter inquired as to appellant's living arrangements, her level of education and employment status. After determining that she was not under the influence of any drugs or medication, the court once again asked appellant if she was "willing to admit to all of the allegations" in the amended complaint, to which she responded, "Yes, they are true." Based on this admission, the court adjudged the children to be neglected. The court thereafter journalized an entry to that effect and continued its previous order of temporary custody to CCDCFS.
 {¶ 56} Even if we were to construe this colloquy as being in substantial compliance with Juv.R. 29(D)(1) regarding appellant's understanding of the nature of the allegations and the consequences of her admission, there is absolutely no compliance with respect to Juv.R.29(D)(2), which governs the constitutional rights a party waives upon entering an admission.[3] The court failed to advise appellant ofany of the rights she would be waiving in exchange for her admission. Written in the conjunctive, both subsections of Juv.R. 29(D) must be satisfied before it can be said that there has been substantial compliance with the rule. Because there was no such compliance, appellant's admission to the complaint as amended was not voluntarily and knowingly entered.
 {¶ 57} Appellant's first assignment of error is well taken and is sustained.
 II. {¶ 58} Based on our disposition of appellant's first assignment of error, we need not address her remaining assignments of error.[4] See App.R. 12(A)(1)(c).
 Conclusion {¶ 59} The order of the juvenile court adjudicating S.G. and M.G. as neglected children is hereby reversed. Without an order of adjudication, the dispositional award of permanent custody to CCDCFS cannot stand and is, likewise, reversed. This case is remanded for further proceedings consistent with this opinion.
It is ordered that appellant recover of appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, JR., P.J. and Kilbane, J., concur.
[1] We note that appellant relies on this court's decision in In reI.M., Cuyahoga App. Nos. 82669 82695, 2003-Ohio-7069, for the proposition that an order adjudicating a child neglected or dependent is a final order capable of immediate review. Id. at ¶ 14. By the I.M.
court's reference to In re Murray, 52 Ohio St.3d 155, it is apparent that the adjudication order becomes final when it is accompanied by an order of disposition, as it was in In re I.M. See In re I.M., 2003-Ohio-7069, at ¶ 6, fn.1.
[2] Within the notice of appeal is the pre-printed name and address of CCDCFS, directing attention of the notice to its legal department.
[3] A court must strictly comply with Juv.R. 29(D) as pertains to constitutional rights, as opposed to non-constitutional rights. See In reOnion (1998), 128 Ohio App.3d 498, 503, citing State v. Ballard,66 Ohio St.2d at 476.
[4] Appellant asserts in these assignments of error that the court erred when it (1) failed to comply with Juv.R. 34; (2) denied a continuance of the dispositional hearing; (3) granted permanent custody without a written report of the guardian ad litem; (4) failed to consider the wishes of the older child; and (5) did not comply with R.C.2151.414(B).