## In re H.F.

[Cite as In re H.F., 176 Ohio App.3d 106, 2008-Ohio-1627.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 90299 and 90300.

Decided April 3, 2008.

Jonathan N. Garver, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and James M. Price, Assistant Prosecuting Attorney, for appellee Cuyahoga County Department of Children and Family Services.

Carla Golubovic, guardian ad litem.

MARY EILEEN KILBANE, Presiding Judge.

{¶ 1} Appellant, S.F., appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, terminating his parent-child relationship with his two minor children, H.F. and R.F.[1]  S.F. argues that the trial court abused its discretion, committed prejudicial error, and violated his due-process rights. Because we find that the trial court did not substantially comply with the

---

1.  The parties are referred to by their initials or title in accordance with this court's policy regarding nondisclosure of identities in juvenile cases.

requirements of Juv.R. 29(D)(1) that the admission be voluntary and made with an understanding of its consequences, we reverse the decision of the trial court and remand the cause for further proceedings.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} S.F. is the biological father of H.F., born April 2, 2004, and R.F., born November 10, 2005.

{¶ 3} H.F. was removed from his mother's custody on May 17, 2004, and was committed to the legal custody of S.F. on September 2, 2004, after being adjudged abused, neglected, and dependent. The Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency") removed H.F. from the custody of S.F. on February 6, 2006, after learning that S.F. was homeless and incapable of providing for the child's basic needs.

{¶ 4} R.F., born to the same biological mother as H.F., was removed from the hospital four days after her birth. A complaint alleging R.F. to be an abused, neglected, and dependent child was filed by the agency on November 14, 2005. The complaint was later dismissed and refiled on February 14, 2006, in case No. AD 06900286, which is before this court on appeal.

{¶ 5} On February 6, 2006, the agency filed a complaint for neglect as to H.F. in case No. AD 06900231, which also contained a prayer for temporary custody and a motion for predispositional custody. The complaint specifically alleged that on or about September 2, 2004, H.F. was adjudicated abused, neglected, and dependent and was placed in the legal custody of his father, S.F., in case No. 04900862. The complaint further alleged that S.F. has a substance-abuse problem and that he could not provide basic needs for the child given his lack of a stable residence and income.

{¶ 6} The refiled complaint as to R.F. alleged that she was an abused, neglected, and dependent child. This complaint alleged that at the time of R.F.'s birth on November 10, 2005, both she and her biological mother tested positive for cocaine and marijuana. It further alleged that S.F. had failed to establish paternity and that S.F., the alleged father, is not prepared to provide the child, R.F., with her basic needs, given that he has a substance-abuse problem, specifically crack cocaine, which prevents him from providing adequate care for R.F.

{¶ 7} On February 15, 2006, S.F. denied the allegations in the complaints but stipulated to the granting of the motion for predispositional custody. A magistrate found probable cause for removal of the children under R.C. 2151.31 and ordered the children committed to the emergency care and custody of CCDCFS. Testimony from the CCDCFS social worker was taken as it relates to the mother,

because she was the custodial parent with regard to R.F. The social worker testified that the mother had failed to complete the treatment-plan services in all particulars, including those regarding housing, parenting classes, substance abuse, and mental-health treatment. S.F. was referred to the drug-court program.

{¶ 8} On May 17, 2006, the court held an adjudicatory hearing and granted, without objection, the agency's oral motions to consolidate the two cases and to make amendments to its complaints.

{¶ 9} With regard to the complaint involving H.F., the complaint was amended to include the following allegations: "Father has a substance abuse problem, specifically cocaine, alcohol, and marijuana, which interferes with his providing appropriate care and supervision of the child. * * * Father cannot provide the basic needs for the child as he is in residential treatment. * * * Father needs parenting education to provide adequate care and supervision of the child."

{¶ 10} With regard to the complaint involving R.F., the complaint was amended to include the following allegations: "Father, S.F., has established paternity. * * * Father, S.F., is not prepared to provide the child with her basic needs as he is currently in residential treatment. * * * Father, S.F., has a substance abuse problem, specifically crack/cocaine, which interferes with him providing appropriate care for the child." The trial court noted the appearance of the assistant prosecuting attorney on behalf of the agency, the agency social worker, the guardian ad litem for the children, S.F., and the assistant public defender, Margaret Isquick, representing S.F. The mother had been served in both cases and had been sent a notice regarding the May 17, 2006 hearing, but she failed to appear. Given her nonappearance, the agency social worker testified regarding the allegations of her neglect as to H.F. and the allegations of abuse, neglect, and/or dependency of R.F. The court found these allegations to be true as to the mother and found the children to be neglected and abused, neglected, and/or dependent.

{¶ 11} The court, when learning from counsel that there would be admissions to the allegations set forth in the amended complaints on the part of S.F., entered into the following colloquy with S.F. and his counsel:

THE COURT: Dad, it's the Court's understanding that you're about to enter an admission to the amended complaint?

S.F.: Yes.

THE COURT: Okay. Very good. And you've had an opportunity to review that with your attorney, is that correct?

S.F.: Yes.

THE COURT: All right. Before I can accept your admission there are certain questions that I need to ask you. No. 1, are you under the influence of any drug or alcohol?

S.F.: No.

THE COURT: Has anyone made any threats or promises in order to get you to admit here this afternoon?

S.F.: No.

THE COURT: Do you understand that by admitting to the complaint as amended that both children—is it R.? * * *

S.F.: R.

THE COURT: R. can be found to be abused, neglected, and/or dependent, and H. could be found to be neglected. Do you understand that?

S.F.: Yes.

THE COURT: All right. Do you understand that if these two children are found to be abused, neglected, and/or dependent, the Agency is asking for what's called temporary custody. Do you understand that?

S.F.: Yes.

THE COURT: And do you understand that with temporary custody, if it's granted to the Agency, you as a parent would be losing some of your parental rights on a temporary basis. Do you understand all that?

S.F.: Yes.

THE COURT: Do you understand that by entering the admission today you're giving up certain rights. Those rights are the right to go to trial. Do you understand that? You're giving up the right to go to trial?

S.F.: Yes.

THE COURT: Okay. You're giving up the right to cross-examine any witnesses, bring in your own witnesses, or testify on your own behalf? Do you understand that?

S.F.: (Indicating.)

THE COURT: All right. You are represented by counsel. Do you have any questions that you wanted to ask your attorney at this time concerning anything that's going on here? And if you do, I certainly will give you time in private to talk with you attorney. Do you have any questions?

S.F.: We already went through it.

THE COURT: Do you want to Miss Isquick?

MS. ISQUICK: No.

THE COURT: Oh, did he say no?

MS. ISQUICK: Yes.

THE COURT: Oh, I'm sorry.

MS. ISQUICK: He said we already went through it.

THE COURT: Okay. Real good. All right. With that being said, as to the amended complaint regarding R.F. Case No. 06900286, do you admit to the amended complaint or deny?

S.F.: I admit.

THE COURT: Okay. As to that case ending in 286, the Court will find the child, R.F., to be abused, neglected, and dependent. As to the child, H., Case No. 06900231, do you admit to the amended complaint or deny?

S.F.: Yeah.

MS. ISQUICK: He admits.

THE COURT: You'll admit?

MS. ISQUICK: You have to say you admit.

S.F.: Yes I admit.

THE COURT: Okay. The Court will accept your admission, find that admission also to be voluntarily, intelligently, and knowingly made. The child, H.F., will be found to be a neglected child.

{¶ 12} The court granted the motion for temporary custody of both children to the agency, and they remained in a foster home together. S.F. was stated to be a participant of the drug-court program, and the agency indicated that its goal was reunification of the children solely with S.F., once he addressed his needs, as the mother failed to participate in the agency's directives and failed to appear for the hearing. The recommendation of the children's guardian ad litem concurred with the agency's plan.

{¶ 13} The magistrate's decision with regard to the finding as to H.F. was filed on June 5, 2006, and the decision with regard to the findings as to R.F. was filed on June 7, 2006. S.F. did not file any objections to the magistrate's decisions under Civ.R. 53. The journal entry of the court accepting, approving, and adopting the magistrate's decision as to H.F. was signed by the originally assigned judge on May 30, 2006, and was filed with the clerk and journalized on June 5, 2006. The journal entry of the court accepting, approving, and adopting the decision of the magistrate as to R.F. was signed by the same judge on May 30, 2006, and was filed with the clerk and journalized on June 7, 2006. S.F. did not file a notice of appeal from the trial court's decision accepting, approving, and adopting the magistrate's adjudicatory finding of neglect as to H.F., and abuse, neglect, and/or dependency as to R.F., nor to the dispositional findings granting emergency temporary custody to CCDCFS. Both journal entries noticed the parties of the right to appeal the judgment of the court to the court of appeals, 30 days from the date of the entry.

{¶ 14} On July 18, 2006, the court issued specific orders to prevail upon S.F. to abide by the terms and conditions of his drug-court contract. S.F. failed to do so, and he was discharged from the program on September 12, 2006.

{¶ 15} On October 19, 2006, the case was remanded to the regular docket for further proceedings. On December 14, 2006, S.F. was appointed counsel on the agency's motion to modify temporary custody to permanent custody. The matter was then continued to January 18, 2007, for pretrial or preliminary hearing.

{¶ 16} On January 18, 2007, at a pretrial, the court granted S.F.'s motion to continue the trial on the motions to remove the children from temporary to permanent custody because he was in a shelter at the time and his assigned counsel wanted time to prepare. The court reset the next hearing for March 15, 2007. All parties, save the children's mother, were present on March 15, 2007.

{¶ 17} The court granted the agency's motion to withdraw its motion to modify temporary custody to permanent custody and its motion for extension of temporary custody. S.F. had completed a 30–day inpatient treatment program, but was unable to participate in the recommended intensive outpatient treatment program because he was recovering from a gunshot wound. However, he eventually completed an intensive outpatient treatment and aftercare program at another agency. Unfortunately, S.F. relapsed within a month of the March 15, 2007 hearing.

{¶ 18} On March 15, 2007, the court scheduled a final preliminary hearing for June 21, 2007, and a dispositional hearing for July 26, 2007. S.F. failed to appear at both of these hearings.

{¶ 19} On the date of the trial, July 26, 2007, motions regarding permanent custody were before the court. S.F.'s attorney made a motion to continue the trial, as his client's "whereabouts were unknown, and to see if we could get the opportunity for him to appear in court."

{¶ 20} The motion was denied. The court proceeded to take testimony from the agency's social worker, who testified that neither biological parent completed the basic-needs objectives of their case plans, did not benefit from the services offered by the agency, and failed to remedy the conditions that had led to the removal of the children from their care. The trial court judge, after hearing from all parties present, indicated that based on the evidence, testimony, and the recommendation of the children's guardian ad litem, he was granting the order of permanent custody as to both children, finding that it was in their best interest.

{¶ 21} The trial court entered its orders, finding H.F. neglected and R.F. abused, neglected, and/or dependent, based on S.F.'s admissions to the amended complaints, and as to the mother, based on the testimony of the agency social worker.

{¶ 22} The successor judge's journal entries from the final trial of July 26, 2006, placing the children in the permanent custody of CCDCFS and terminating all parental rights of the mother and S.F., were signed on July 27, 2007, and were journalized by the clerk of courts on August 10, 2007.

{¶ 23} S.F., pro se, filed a preprinted notice of appeal in both cases on August 13, 2007, attaching the final journal entries of August 10, 2007. The notice of appeal indicated that he, as pro se father of the children named, "gives notice that he will appeal on questions of law, the granting of permanent custody of this child/these children to the Cuyahoga County Department of Human Services." The notice also states that "[t]his appeal is taken pursuant to Ohio Rule of Appellate Procedure 4(A) and is filed as a matter of right."

{¶ 24} A motion of S.F., pro se, filed with this court on August 14, 2007, requested appointment of counsel and a transcript at the state's expense. This court appointed appellate counsel of record to represent S.F. and sua sponte consolidated appeal Nos. 90299 (*In re H.F.*, AD 06900231) and 90300 (*In re R.F.*, AD 06900286) for the record, briefing, hearing, and disposition.

## APPEALABILITY OF JUDGMENTS BASED ON MAY 17, 2006 HEARING

{¶ 25} Because we find the first assignment of error to be well founded and determinative, we do not address the other two assignments of error set forth in the appendix attached to this opinion.

{¶ 26} S.F.'s first assignment of error reads as follows:

The trial court committed prejudicial error and denied Appellant due process of law at the adjudicatory hearing by accepting an admission from Appellant without first determining: (i) that he understood that by entering an admission he was waiving important constitutional rights, including the right to remain silent; and (ii) that he fully understood the consequences of an admission. *Juv.R. 29(D). Fifth and Fourteenth Amendments, Constitution of the United States; Article I, § 10 and § 16, Constitution of the State of Ohio.*

(Emphasis sic.)

{¶ 27} Before addressing S.F.'s first assignment of error, we must determine whether this issue is timely appealed pursuant to App.R. 4(A).

{¶ 28} CCDCFS contends that S.F. failed to timely appeal the trial court's decision adopting as judgment of the court the May 17, 2006 adjudication of the children as abused, neglected, and/or dependent and the dispositional portion of the judgments placing the children in the emergency temporary custody of the agency.

{¶ 29} This court was presented with the same preliminary issue in the case of *In re A.C.*, 160 Ohio App.3d 457, 2005-Ohio-1742, 827 N.E.2d 824, and relied on its then recent decision of *In re S.G.*, Cuyahoga App. No. 84228, 2005-Ohio-1163, 2005 WL 616115, in revising previous holdings that when a trial court made an adjudicatory finding of dependency, neglect or abuse, the parent must appeal that finding within 30 days of the judgment entry as required by App.R. 4(A).[2]  These holdings were based on the Supreme Court decision of *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, finding that an aggrieved party generally has 30 days from the time an adjudication order is entered to appeal that order, when it is accompanied by a temporary order of disposition, as a final, appealable order, as it affects a significant parental right.  Id. at syllabus.

{¶ 30} In *In re A.C.*, supra, this court stated, "this court revised its holding on this issue in *In re S.G.*, Cuyahoga App. No. 84228, 2005-Ohio-1163, 2005 WL 616115, and ruled that App.R. 4(B)(5) permitted a parent to appeal from an adjudicatory ruling either at the time that ruling was made or in the appeal of the final dispositional order."  *In re A.C.*, 160 Ohio App.3d 457, 2005-Ohio-1742, 827 N.E.2d 824, at ¶ 11.  The *A.C.* court further stated, "In *S.G.*, however, the Eighth District clarified an alternative opportunity to appeal an admission made at the adjudicatory hearing.  *S.G.* relied on App.R. 4(B)(5) * * *."  *In re A.C.*, at ¶ 14.  "*S.G.*, supra, acknowledged the adjudicatory ruling finding the children in question to be neglected was a final appealable order, consistent with the Ohio Supreme Court's holding in *In re Murray* * * *."  The court went on, however, to explain that the rule also "authorizes an appeal of an adjudication order alternatively thirty days after the court renders a final order on all issues in the case."  *A.C.*, at ¶ 15, quoting *S.G.*, at ¶ 11.  "We agree with this interpretation."  Id. at ¶ 15.

{¶ 31} This interpretation was also adopted in *In re A.D.*, Cuyahoga App. No. 87510, 2006-Ohio-6036, 2006 WL 3318059:

App. R. 4(B)(5), however, provides an exception to App. R. 4(A), and authorizes an appeal of an adjudication order alternatively thirty days after the court renders a final order on all issues in the case.  This rule governs partial final judgments and provides:

"If an appeal is permitted from a judgment or order entered in a case in which the trial court has not disposed of all claims as to all parties, other than a judgment or order entered under Civ. R. 54(B), a party may file a notice of

---

2. See also *In re M.L.R.*, 150 Ohio App.3d 39, 2002-Ohio-5958, 779 N.E.2d 772; *In re C.H.*, Cuyahoga App. Nos. 82258 and 82852, 2003-Ohio-6854, 2003 WL 22966248; *In re M.Z.*, Cuyahoga App. No. 80799, 2002-Ohio-6634, 2002 WL 31722231; *In re Michael A.*, Cuyahoga App. No. 79835, 2002-Ohio-1270, 2002 WL 441590; *In re Hart*, Cuyahoga App. No. 75326, 1999 WL 1129590.

appeal within thirty days of entry of the judgment or order appealed or the judgment or order that disposes of the remaining claims. Division (A) of this rule applies to a judgment or order entered under Civ. R. 54(B)."

Id. at ¶ 14.

{¶ 32} In the case sub judice, S.F. could appeal the trial court's final ruling adopting and approving the magistrate's decision in the adjudicatory and dispositional hearing or after the case was disposed of by the final dispositional hearing of the trial court judge by journal entries signed on July 27, 2007, and journalized by the clerk of court on August 10, 2007.

## INSUFFICIENCY OF COMPLIANCE WITH JUV.R. 29(D)

{¶ 33} At the outset, we must acknowledge that the termination of parental rights is "the family law equivalent of the death penalty," *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680; *In re Hoffman,* 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485. See also *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169 (which states that a parent has a " 'fundamental liberty interest' in the care, custody, and management of [his or her] child" and "the right to raise one's children is an 'essential' and 'basic civil right.' ") Id. at 157, 556 N.E.2d 1169.

{¶ 34} Juv.R. 29 outlines the procedure the juvenile court must follow upon the entry of an admission to the allegations of a complaint at an adjudicatory hearing. The trial court, pursuant to Juv.R. 29(D),

shall not accept an admission without addressing the party personally and determining both of the following:

(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

{¶ 35} When a constitutional right is involved, as is the case here, the law requires strict compliance, and the failure of the trial court to advise a parent of a constitutional right is, per se, prejudicial. *In re Onion,* 128 Ohio App.3d 498, 715 N.E.2d 604. This court has held that when a constitutional right is involved, such as in cases involving termination of parental rights, a trial court's failure to comply with Juv.R. 29(D) has been found to constitute plain error. *In re A.C.,* 160 Ohio App.3d 457, 2005-Ohio-1742, 827 N.E.2d 824, at ¶ 24.

{¶ 36} As recently stated by this court in *In re L.C.,* Cuyahoga App. No. 90390, 2008-Ohio-917, 2008 WL 597617, "Juv.R. 29(D) places an affirmative duty upon the Juvenile Court. Prior to accepting a parent's admission, the Juvenile Court

must personally address the parent appearing before the court and determine that the parent, and not merely the attorney, understands the nature of the allegations and the consequences of entering the admission. The trial court is required to make careful inquiries in order to ensure that the party's admission is voluntary, intelligent, and knowing." Id. at ¶ 23.

{¶ 37} A trial court's failure to substantially comply with Juv.R. 29(D) "constitutes prejudicial error that requires a reversal of the adjudication in order to permit the party to plead anew. We review whether a court has substantially complied with Juv.R. 29(D) de novo." *In re L.C.* at ¶ 24.

{¶ 38} In *In re M.C.*, Cuyahoga App. Nos. 85054 and 85108, 2005-Ohio-1968, 2005 WL 977832, this court reversed an adjudication of neglect and an award of permanent custody when the trial court failed to inform the parent and grandparent that by entering an admission under Juv.R. 29, they were admitting to the truth of the allegations in the amended complaint and to a finding of neglect and that they were giving up rights that applied to the adjudicatory hearing.

{¶ 39} In the case sub judice, as in *In re M.C.*, the trial court failed to personally address S.F. and inform him that by entering admissions, he was admitting to the truth of the allegations in the amended complaint and to the respective adjudicatory findings. In fact, the court, in a manner similar to that of the one in *In re Beechler*, 115 Ohio App.3d 567, 571, 685 N.E.2d 1257 (dealing with a review of Juv.R. 29 explanation of rights in the context of a delinquency case) focused on the responses of the attorney rather than the actual party giving up his or her rights.

> This rule places an affirmative duty upon the juvenile court. Prior to accepting an admission, the juvenile court must personally address the actual party before the court and determine that that party, and not merely the attorney, understands the nature of the allegations and the consequences of entering the admission. Furthermore, the test for the accused delinquent's understanding of the charges is subjective, rather than objective, in that it is not sufficient that a hypothetical reasonable party would understand. The person actually before the court must do so.

Id. at 1259.

{¶ 40} Most critically, the trial court failed to inform S.F. that he was giving up rights that applied not only to the adjudicatory and dispositional hearing, but more importantly, to the final dispositional hearing, resulting in termination of his parental rights. S.F. responded affirmatively to the following questions of the magistrate:

THE COURT: Do you understand that if these two children are found to be abused, neglected, and/or dependent, the Agency is asking for what's called temporary custody?

THE COURT: And do you understand that with temporary custody, if it's granted to the Agency, you as a parent would be losing some of your parental rights on a temporary basis?

{¶ 41} S.F. was not told that by entering into the admissions that the trial court would not only make a determination with respect to the adjudicatory status of the children and temporary custody, but that those findings could be used against S.F. at a later time if the agency sought permanent custody of the children, which is exactly what happened when S.F. relapsed and experienced difficulties stemming from the relapse.

{¶ 42} In *In re A.A.*, Cuyahoga App. No. 85002, 2005-Ohio-2618, 2005 WL 1245620, this court reversed an adjudication of neglect and an award of permanent custody when the trial court failed to advise the parent of the constitutional right to remain silent. A review of the record herein discloses that when the magistrate indicated that S.F. would be giving up the right to go to trial, she mentioned the right to cross-examine or challenge any witnesses, the right to bring in his own witnesses and his right to testify on his own behalf, i.e., the right to introduce evidence at the adjudicatory hearing, but she failed to mention the right to remain silent explicitly set forth in Juv.R. 29(D)(2). In the case at bar, it is clear from the record that the magistrate failed to advise S.F. of his constitutional right to remain silent, and the trial court erred in adopting the findings on that basis alone.

{¶ 43} In *In re S.G.*, 2005-Ohio-1163, 2005 WL 616115, this court reversed an adjudication of neglect and an award of permanent custody when the trial court failed to advise the parent of *any* of the constitutional rights that were being waived by the admission. Although this was not the case herein, the failure to include the right to remain silent in the review of constitutional rights being waived by admission compels reversal.

{¶ 44} Lastly, in *In re A.D.*, Cuyahoga App. No. 87510, 2006-Ohio-6036, 2006 WL 3318059, this court again reversed an adjudication of neglect and award of permanent custody when the trial court accepted the parent's admissions to allegations in an amended complaint without first determining that she understood that she was waiving her constitutional rights, as mandated by Juv.R. 29(D). Further, the *A.D.* court stated:

Upon review of similar questioning of the appellant in *In re S.G. & M.G.*, supra, this court stated the following:

"Even if we were to construe this colloquy as being in substantial compliance with Juv.R. 29(D)(1) regarding appellant's understanding of the nature of the allegations and the consequences of her admission, there is absolutely no compliance with respect to Juv.R. 29(D)(2), which governs the constitutional rights a party waives upon entering an admission. The court failed to advise appellant of any of the rights she would be waiving in exchange for her admission. Written in the conjunctive, both subsections of Juv.R. 29(D) must be satisfied before it can be said that there has been substantial compliance with the rule. Because there was no such compliance, appellant's admission to the complaint as amended was not voluntarily and knowingly entered."

Id. at ¶ 72, 73.

{¶ 45} Thus, as we found in the cases cited above, because the trial court failed to ascertain that S.F. understood the nature of the allegations and all the consequences of his admissions as required by Juv.R. 29(D)(1), and because it failed to advise S.F. of all the rights he would be waiving in exchange for his admissions as required by Juv.R. 29(D)(2), it cannot be said that his admissions to the amended complaints were voluntarily and knowingly entered. We agree with S.F.'s contention that the trial court accepted his admissions in violation of Juv.R. 29(D), requiring a reversal of the adjudication in order to permit him to plead anew.

{¶ 46} Based on our disposition of the first assignment of error herein, this court will not address the remaining assignments of error set forth in the appendix to this opinion. See App.R. 12(A)(1)(c).

{¶ 47} The orders of the juvenile court adjudicating H.F. as a neglected child and R.F. as an abused, neglected, and dependent child, based on allegations set forth in the amended complaints as to S.F. only, are hereby ordered reversed. Without these orders of adjudication relating to S.F., the dispositional award of permanent custody to CCDCFS as it relates to S.F. cannot stand and is, likewise, reversed. This cause is remanded for further proceedings consistent with this opinion.

Judgment accordingly.

BLACKMON and BOYLE, JJ., concur.

## APPENDIX

"II. The judgment terminating Appellant's parental rights is against the manifest weight of the evidence and constitutes a denial of due process of law. *Fourteenth Amendment, Constitution of the United States: Article I, § 16, Constitution of the State of Ohio.*

III. The trial court abused its discretion and denied Appellant due process of law by denying his motion for continuance of the hearing held on July 26, 2007."